UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CLIFFORD JOHNSON,

                  Plaintiff,

   -v.-

COUNTY OF NASSAU, NASSAU COUNTY
HEALTH CARE CORPORATION, NASSAU
UNIVERSITY MEDICAL CENTER, SHARON
POPPER in her official and individual capacity,
RICHARD TURAN, in his official and
individual capacity, MICHAEL H. MOSTOW,
in his official and individual capacity, and KARL
KAMPE, in his official and individual capacity,

                  Defendants.
_____

**AMENDED MEMORANDUM
AND ORDER**
04-CV-2883 (DRH)(MLO)

**Appearances:**

**For the Plaintiff:**
**LAW OFFICES OF FREDERICK K. BREWINGTON**
50 Clinton Street, Suite 501
Hempstead, New York 11550
By: Frederick K. Brewington, Esq.

**For the Defendants:**
**CLIFTON BUDD & DEMARIA, LLP**
420 Lexington Avenue, Suite 420
New York, New York 10170-0089
By: George F. Brenlla, Esq.

**HURLEY, District Judge:**

          Plaintiff Clifford Johnson ("Plaintiff") filed the present action against defendants

County of Nassau,[1] Nassau County Health Care Corporation ("NCHCC"), Nassau University

Medical Center ("NUMC"), Sharon Popper ("Popper"), Richard Turan ("Turan"), Michael H.

_____

     [1] By Stipulation of Discontinuance So Ordered on April 27, 2005, the County of Nassau
was dismissed from this action.

Mostow ("Mostow"), and Karle Kampe ("Kampe") (collectively, "Defendants") claiming that he was discriminated against based on his race and in retaliation for his alleged complaints of race discrimination. Defendants have moved to dismiss portions of the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff is an African-American male who at all times relevant to the Complaint was an employee of NUMC and NCHCC. (Compl. ¶ 7.) In or about July 1999, Plaintiff was promoted to Chairman and Director of NUMC's Office of Diversity, (*id.* ¶ 18), and had the primary function of interceding on behalf of employees who were experiencing some form of discrimination in the workplace. (*Id.* ¶ 20.) Plaintiff claims that despite the fact that Defendants had created the Office of Diversity, Plaintiff and his staff were discouraged from raising issues concerning discrimination. (*Id.* ¶ 29.) Plaintiff further claims that as a result of his complaints regarding differential treatment and discrimination, Defendants repeatedly "transferred" the Office of Diversity to other departments and demoted Plaintiff several times. (*Id.* ¶¶ 35-59.)

The Complaint asserts six causes of action: (1) unlawful race discrimination and retaliation under Title VII; (2) unlawful race discrimination and retaliation under Title VI; (3) violations of 42 U.S.C. § 1983 ("Section 1983"); (4) unlawful discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"); (5) violations of the First Amendment in violation of Section 1983; and (6) unlawful race discrimination and retaliation in violation of the New York Executive Law. Defendants move to dismiss all claims against the individual defendants as well as the second, third, fourth, fifth, and sixth causes of action. For the reasons indicated below,

Defendants' motion is granted in part and denied in part.

## **DISCUSSION**

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson,* 189 F.3d 284, 286 (2d Cir. 1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King*, 189 F.3d at 287; *Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

I.     ***Defendants' Motion to Dismiss Plaintiff's Title VI and Title VII Claims as Against the Individual Defendants***

Defendants move to dismiss counts one and two as against the individual defendants, arguing that individual defendants cannot be held liable under Title VI or Title VII. In response, Plaintiff points out that in his Complaint, these two causes of action are not asserted against the individual defendants; rather, they are merely asserted against Nassau County, NCHCC, and NUMC. In that regard, Plaintiff states that he "did not, nor did [he] intend to charge the individually named Defendants, Popper, Turan, Mostow and Kampe, with violations of Title VII and Title VI as Counsel for Plaintiff was well aware that these statutes did not apply to individuals." (Pl.'s Mem. at 4.)

After reviewing the Complaint, the Court finds that although counts one and two do not specifically name the individual defendants, they do assert liability against "Defendants County, NCMC/NUMC, *their agents and employees*." (Compl. ¶ 69 (emphasis added); *see also id.* ¶ 65.) Thus, to the extent the Complaint could be read to assert liability under the first two causes of action against the individual defendants, they are hereby dismissed as against the

individual defendants only.

## II.    *Defendants' Motion to Dismiss Plaintiff's Second Cause of Action Under Title VI*

Title VI of the Civil Rights Act of 1964 provides as follows:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000(d).  Section 2000(d)-3 further states:

Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

*Id.* § 2000(d)-3.  This section essentially "requires a logical nexus between the use of federal funds and the practice toward which agency action is directed." *Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981).

Although the statute speaks only of agency action, the Second Circuit has held that the logical nexus requirement applies to private actions as well. *Id.* "Thus, for a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement  is that the employer be the recipient of federal funds aimed primarily at providing employment." *Id.* (citing *Carmi v. Metropolitan St. Louis Sewer Dist.*, 620 F.2d 672, 674-75 (8th Cir. 1980), *abrogated on other grounds*, *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624 (1984)); *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000) ("In short, plaintiff must allege a 'logical nexus' between a federally funded program or activity and the employment discrimination he allegedly suffered."), *aff'd*, 62 Fed. Appx. 28 (2d Cir. 2003);

*Rosario-Olmedo v. Community School Bd. for Dist. 17*, 756 F. Supp. 95, 96 (E.D.N.Y. 1991)

("As a threshold requirement for an action under these sections, the federal funds allegedly

giving rise to the action must have the 'primary objective' of providing employment.").  As

noted by the Eighth Circuit in *Carmi*, "[t]he language of section 2000d-3 was added to the bill to

make it clear that discrimination in employment which does not affect *intended beneficiaries of*

*federal assistance* is not within the reach of title VI."  620 F.2d at 675 n.4 (emphasis added); *see*

*also Boykin v. KeyCorp*, No. 03-CV-944S, 2005 WL 711891, at *7 (W.D.N.Y. Mar. 28, 2005)

(stating that a Title VI plaintiff must allege that he "was an entitled beneficiary of the program or

activity receiving [federal] aid").  Thus, "Title VI authorizes remedial action if employment

practices tend to exclude from participation, deny benefits to, or otherwise subject the primary

beneficiaries of a federal program to discrimination in violation of 42 U.S.C. § 2000(d)."  *Ahern*

*v. Board of Educ. of Chicago*, 133 F.3d 975, 977 (7th Cir. 1998).

Finally, the Court notes that "[c]ourts have dismissed complaints for failure to

specify when funds were received, what they were used for, and whether their primary objective

was to provide employment."  *Rosario-Olmedo*, 756 F. Supp. 95, 96 (E.D.N.Y. 1991) (citing

cases); *see also Lanzo v. City of N.Y.*, No. 96-CV-3242, 2000 WL 804628, at *4 (E.D.N.Y. May

18, 2000) (granting summary judgment on plaintiff's Title VI claims where plaintiff "herself

admits that the primary purposes of federal Head Start funds is to provide early childhood

development, and not to provide employment to individuals such as the plaintiff."); *Commodari*,

89 F. Supp. 2d at 378 (finding plaintiff had no standing to sue under Title VI where plaintiff

failed to allege or prove "any logical nexus between his termination and a federal funded . . .

program or activity").

Here, the only allegation in the Complaint that bears on federal funding is found in paragraph eleven, which provides as follows:

> Defendants County, []NUMC, and NCHCC each receive Federal financial assistance to conduct and maintain its programs including running its hospital which includes testing, education, evaluation, training and treatment.

(Compl. ¶ 11.) On its face, this allegation does not establish that the primary purpose of the federal funds was to provide employment or that Plaintiff was the intended beneficiary; rather it merely states that the aim of the funds was to assist these defendants in conducting and maintaining their programs. Accordingly, the Court finds that the Complaint fails to satisfy Section 2000(d) and, therefore, Plaintiff fails to state a claim under Title VI.

This does not end the Court's inquiry, however, as Plaintiff cites to evidence outside the Complaint and urges the Court to sustain his claim until he has had an opportunity to conduct further discovery. This argument puts the cart before the horse and ignores the fact that discovery has to be tied to a pleading which passes muster under Rule 12(b)(6). Nonetheless, having found that Plaintiff has failed to allege a violation of Title VI, the Court examines Plaintiff's evidence to determine whether it would support an amendment. Because the Court finds that the facts provided would not cure the defect in the Complaint, to the extent Plaintiff seeks leave to amend to include these new facts, that application is denied. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining leave to amend should be denied where the proposed amendment would be futile).[2]

---

[2] Although Plaintiff has not formally moved for leave to amend, Plaintiff's proffer, which includes facts outside the Complaint, has been reviewed by the Court under that standard.

Citing to evidence outside the Complaint, Plaintiff claims that:

> Defendants received a portion of a federal grant worth $35 Million
> from the US Department of Health and Human Services
> (USDOH), which was administered by the Health Resources and
> Services Administration (HRSA) (*see Exhibit A,[3] HRSA News
> Brief*).  Upon information and belief, the Defendants receive
> similar grants from the USDOH/HRSA yearly and/or have
> received similar grants on multiple occasions in the past several
> years according to their needs.  According to the HRSA's website,
> in a section entitled "Funding Opportunities", the HRSA
> explained:

> > Funding Opportunities
> > HRSA Health Professions grants and cooperative
> > agreements support innovations and targeted
> > expansions in health professions education and
> > training.  **Emphasis is on increasing the diversity
> > of the health care workforce and preparing
> > health care providers to serve diverse
> > populations** and to practice in the nation's 3,000
> > medically underserved communities.

(Pl.'s Mem. at 8 (emphasis in original).)  Plaintiff argues that because the Complaint alleges that

he was promoted to Chairman and Director of the Office of Diversity, whose primary function

was to intercede on behalf of employees who were experiencing discrimination in the workplace,

"[t]his evidence suggests that the defendants were, indeed, receiving federal funds aimed

primarily at employment (more specifically, the funds were aimed at 'increasing **the diversity of

the health care workforce** and preparing health care providers to serve diverse populations')."

(*Id.* at 9 (emphasis in original).)  Plaintiff also argues that as an African American male

employed by Defendants as Chairman and Director of the Office of Diversity, he was "clearly

_____

[3]  The Court notes that no Exhibit A is attached to Plaintiff's papers although Plaintiff
does reference a website which allegedly contains the same information.  The Court, however,
was unable to open the web address proffered.

the intended beneficiary of the federal grants because he is a minority who was delegated and paid by the defendants to protect, facilitate and increase diversity in the workforce." (*Id.*)

Even assuming Defendants were receiving federal funds to "support innovations and targeted expansions in health professions education and training," with an emphasis "on increasing the diversity of the health care workforce and preparing health care providers to serve diverse populations," that does not suggest that the primary purpose of those funds was to provide *Plaintiff* with employment or that *Plaintiff* was the primary beneficiary of that aid. Plaintiff is attempting to equate federal funds aimed generally at supporting education and training regarding workplace diversity with federal funds intended to provide him employment merely because he was employed at the "Office of Diversity." This allegation, standing alone, does not provide the required nexus, as instructed by the Second Circuit, between the federal funds and Plaintiff's employment as it does not suggest that the federal grant was aimed primarily at funding Plaintiff's position at the Office of Diversity. Accordingly, because any amendment would be futile, Plaintiff's Title VI claim is dismissed and, to the extent Plaintiff seeks leave to amend, that application is denied.

### III. Defendants' Motion to Dismiss Plaintiff's Claims Under Sections 1981 and 1983

On March 4, 2003, Plaintiff filed a complaint with the New York State Division of Human Rights (the "NYSDHR") alleging race discrimination and unlawful retaliation. After an investigation, the NYSDHR issued a Determination and Order After Investigation dismissing the Complaint, finding "no probable cause." (Defs.' Not. of Mot. Ex. C.) Plaintiff has not appealed from this determination. Defendants now contend that Plaintiff's claims of discrimination and retaliation pursuant to Sections 1981 and 1983 should be dismissed under the

doctrines of res judicata and/or collateral estoppel.

     **A.**     *Whether the Administrative Records are Properly Before the Court*

     In their moving papers, Defendants attached as exhibits a copy of the complaint filed by Plaintiff with the NYSDHR and a copy of the NYSDHR's Determination and Order After Investigation.  In his opposition papers, Plaintiff argued that his claims were not precluded based on the NYSDHR determination because he did not have an adequate opportunity to litigate his claims in that forum.  Plaintiff did not object to the Court's review of Defendants' exhibits. In reply, Defendants submitted a copy of the entire NYSDHR investigatory file pertaining to Plaintiff's case.  Plaintiff now argues that this file is not properly before the Court on a Rule 12(b)(6) motion.  Plaintiff further submits that because Defendants first submitted the file in their reply papers, Plaintiff was not afforded an opportunity to adequately address it.

     Although a court in deciding a Rule 12(b)(6) motion is generally limited to considering the facts alleged in the complaint, a district court may also consider documents appended to the complaint, documents incorporated by reference, and matters of which judicial notice may be taken.  *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).  In addition, a court may also consider documents outside the pleadings if they are "integral" to the complaint and upon which the complaint relies.  *See International Audiotext Network, Inc. v. American Tel. and Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995).

     Here, the Complaint references Plaintiff's March 4, 2003 filing with the NYSDHR but does not attach any documents relating thereto.  (*See* Compl. ¶ 60.)  Arguably, the NYSDHR complaint, determination, and investigatory file are integral to Plaintiff's Complaint as they substantiate his claim in the face of a 12(b)(6) motion based on collateral estoppel and/or

res judicata.  In any event, the Court need not reach that issue as the Court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment."  *Evans v. New York Botanical Garden*, No. 02 Civ. 3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (citations omitted); *see also Dutton v. Swissport USA, Inc.*, No. 04 CV 3417, 2005 WL 1593969, at * 1 (E.D.N.Y. July 1, 2005) (taking judicial notice of transcript from Worker's Compensation Board hearing and plaintiff's NYSDHR complaint); *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (taking judicial notice of transcript from disciplinary hearing brought pursuant to section 75 of the New York State Civil Service Law and a report of the Impartial Hearing Officer that resulted from the hearing).

Although Defendants did not submit the investigatory file until they filed their reply papers, Plaintiff was aware of and possessed the file and does not dispute its authenticity. Moreover, the entire thrust of Plaintiff's opposition to Defendants' argument is that Plaintiff did not have a full and fair opportunity to litigate his claims before the NYSDHR.  Despite this argument, Plaintiff did not attach the agency file for the Court to review.  Under these circumstances, the Court finds that the investigatory file is properly before the Court.

**B.**     ***Res Judicata and/or Collateral Estoppel***

With respect to employment discrimination claims under sections 1981 and 1983, the Supreme Court has held that "when a state agency 'acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  *University of Tennessee v. Elliott*, 478 U.S. 788, 799

(1986) (quoting *United States v. Utah Contr. & Min. Co.*, 384 U.S. 394, 422 (1966), *superseded by statute on other grounds*); *see also Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 728 (2d Cir. 2001) (citing *Elliott*); *Evans*, 2002 WL 31002814, at *5 (same).[4] A New York State agency determination will collaterally estop a plaintiff from subsequently bringing suit in the New York courts if there is an "'identity of issue which has necessarily been decided in the prior action and is dispositive of the present action,' and the party to be estopped . . . had a 'full and fair opportunity to contest the decision now said to be controlling.'" *Kosakow*, 274 F .3d at 730 (quoting *Schwartz v. Pub. Adm'r,* 24 N.Y.2d 65, 71 (1969)). The proponent of preclusion bears the burden of proving identity of issue, while the adverse party bears the burden of proving that he lacked a full and fair opportunity to litigate the issue. *Id.*

Here, Plaintiff does not dispute that there is identity of issue between the NYSDRH proceeding and the present action. Therefore, the Court need only determine whether the NYSDHR proceeding afforded Plaintiff a full and fair opportunity to litigate his claims. In making this determination, the Court must examine "'whether the procedures used in the administrative proceeding assured that the information presented to the agency were sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired.'" *Id.* (quoting *Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276 (1988)). Factors used to guide the Court include "'the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence,

---

[4] Unreviewed decisions of state administrative agencies will not bar a subsequent trial de novo under Title VII, however. *Elliott*, 478 U.S. at 796.

indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.'" *Id.* (quoting *Schwartz*, 24 N.Y.2d at 72).

### 1.    *The NYSDHR Proceeding*

Plaintiff filed a complaint with the NYSDHR against NUMC on March 4, 2003, alleging race discrimination and unlawful retaliation.[5]  That complaint was "cross-filed" with the Equal Employment Opportunity Commission ("EEOC") that same day.  (Compl. ¶ 60.)  Plaintiff was represented by present counsel during the entirety of the proceeding.  (*See* Reply Aff. Ex. 1.)  In response, Defendants submitted a detailed letter denying the substantive allegations and providing additional facts.  (*Id.*)  Subsequently, the NYSDHR sent Defendants' response to the Plaintiff's attorney who submitted a detailed rebuttal with exhibits.  (*Id.*)  After reviewing these documents, the NYSDHR instructed both parties to submit additional documentation and evidence.  (*Id.*)  Both parties complied with the request.  (*Id.*)  After reviewing all of the evidence, on February 11, 2004, the NYSDHR issued a Determination and Order After Investigation dismissing the Complaint, finding "no probable cause."  (*Id.*)  Specifically, the NYSDHR found:

> The evidence presented indicates that the complainant was hired in 1984 and has been promoted on at least six occasions during his employment.  The evidence presented indicates that complainant has always received the appropriate salary and benefits commensurable with the position held.
>
> The evidence presented indicates that complainant was promoted to Community Service Representative in June, 2001, under the

---

[5]  Neither party has addressed the fact that Plaintiff's NYSDHR complaint was asserted against defendant NUMC only, while the instant action, including Plaintiff's Section 1981 and 1983 claims, are asserted against multiple defendants.  Accordingly, the Court's holding with respect to collateral estoppel and res judicata will apply to defendant NUMC only.

supervision of Dr. Harper. There is insufficient evidence presented by complainant to demonstrate that his position was a supervisory position or that he was "in charge" of the Office of Diversity.

The evidence presented indicates that the Office of Diversity is currently under the supervision of the Office of Personnel's Vice President, Karl Kampe and that complainant remains employed without adverse action.

There is no evidence presented which demonstrates that complainant's race/color and/or his alleged opposing of discriminatory practices were factors in the reorganization of the unit or his "alleged demotion".

The Complaint is therefore ordered dismissed and the file is closed.

(Defs.' Not. of Mot. Ex. C.) This finding was subsequently adopted by the EEOC without independent review and the EEOC issued Plaintiff a right to sue letter on April 12, 2004. Plaintiff did not seek review of this determination in state court.

### 2. Did the NYSDHR Proceeding Afford Plaintiff a Full and Fair Opportunity to Litigate his Claims

Plaintiff makes the following assertions to support his contention that the NYSDHR investigation did not afford him a full and fair opportunity to litigate his discrimination claims. At the NYSDHR, "Plaintiff and/or Plaintiff's counsel never got the opportunity to examine and cross examine the defendants and/or witnesses," "[P]laintiff never had the opportunity to present evidence before a competent tribunal," "Plaintiff never had the opportunity to testify in his own behalf," "Plaintiff was never afforded any of the procedural safeguards in the NYSDHR that would warrant an application of collateral estoppel," "[t]he determination of the NYSDHR was not rendered pursuant to and/or following procedures that parallel that of a state court," and "the NYSDHR's determination was never appealed, reviewed

or affirmed by a state court."  (Pl.'s Mem. at 13.)

As an initial matter, the Court notes that Plaintiff's last two assertions, i.e., that the NYSDHR determination was not rendered pursuant to state court procedures and that Plaintiff never appealed the decision by the NYSDHR, are of no moment as the Supreme Court made clear in *Elliott* that under appropriate circumstances, *unreviewed* state administrative proceedings may be given preclusive effect in federal court with regard to the Civil Rights statutes.  478 U.S. at 797-98.  Essentially, then, what Plaintiff's argument boils down to is that the NYSDHR made its determination based solely upon the documentation submitted and did not conduct a hearing.

In analyzing whether "the facts asserted were adequately tested" and "the issue[s] w[ere] fully aired" in the NYSDHR proceeding, the Court follows the Second Circuit's direction is *Kosakow* and examines the factors set forth by the New York Court of Appeals in *Schwartz*. 274 F.3d at 734.  Several factors weigh in favor of the application of collateral estoppel. Specifically, as to the forum of the prior litigation, it is beyond dispute that the NYSDHR has the authority to adjudicate disputes regarding employment discrimination and come to binding determinations with respect to those disputes.  *See id.*  Moreover, Plaintiff was represented by present counsel during the entirety of the NYSDHR proceeding and there is no indication that counsel is anything but competent and experienced.  In this regard, it is noteworthy that although claims brought pursuant to sections 1981 and 1983 do not require exhaustion of administrative remedies prior to suit in federal court, *see, e.g.*, *Harper v. National Kidney Found., Inc.*, No. 03-CV-6247L, 2005 WL 43774, at *5 (W.D.N.Y. Jan. 10, 2005); *Williams v. State Univ. of N.Y.*, 635 F. Supp. 1243, 1246 (E.D.N.Y. 1986), claims brought pursuant to Title VII do.  Thus,

although not addressed by the parties, Plaintiff, via counsel, was presumably aware of the foreseeability of future litigation in federal court following the administrative determination and the likelihood of preclusion arising therefrom. Plaintiff therefore had "initiative to litigate," *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 491 (1984), also favoring preclusion.

In addition, there is no indication that the determination made by the NYSDHR was a "compromise verdict." Finally, Plaintiff does not claim that any new evidence has become available to him after his NYSDHR complaint was dismissed.

Other factors, however, do not support claim preclusion. As noted by the Second Circuit in *Kosakow*, NYSDRH proceedings are much less formal than those conducted in federal court. 274 F.3d at 735. In that regard, Plaintiff did not receive any type of hearing where he could confront witnesses, there is no record of any interviews of witnesses, and Plaintiff was not afforded any discovery prior to the determination. *See id.* ("[I]t cannot be ignored that the DRH makes factual conclusions based on a record that is far less developed than that before a federal court."). Although this is not dispositive, as the federal rules permit dismissal of a case via summary judgment without the benefit of a full hearing, it is still relevant where as here, and in contrast to the federal rules on summary judgment, Plaintiff was not afforded an opportunity to conduct discovery prior to the agency's determination. *See id.*

In *Kosakow*, the Second Circuit was presented with similar facts and held that the plaintiff did not have a full and fair opportunity to litigate before the NYSDRH. *Id.* at 734. In that case, the NYSDRH made its determination based upon documentation only and the plaintiff was not afforded a hearing, did not interview witnesses, and did not conduct discovery. *Id.* In addition, similar to the instant case, the plaintiff had not established that any new evidence

became available after her NYSDHR complaint was dismissed.  *Id.* at 734.  The one key

difference in *Kosakow*, however, is that the plaintiff was acting pro se before the NYSDHR.

Therefore, the Second Circuit noted that "her understanding of the implications of her decision

should not be cavalierly assumed."  *Id.* at 735.  Moreover, as the court explained:

> In the context of administrative estoppel, the New York Court of
> Appeals has also instructed that "a party explicitly soliciting
> resolution of an issue from an agency, who fully participates in the
> administrative proceeding which follows with the expectation that
> all will be bound by the result reached there, may be fairly
> precluded from relitigating the issue in a subsequent proceeding."
> *Allied*, 72 N.Y.2d at 277, 532 N.Y.S.2d at 232, 528 N.E.2d 153.
> As explained in *Allied,* this consideration, along with the others
> discussed above, is properly seen as part of "the beguilingly simple
> prerequisite that the administrative decision [is] 'quasi-judicial' in
> character."  *Allied*, 72 N.Y.2d at 276, 532 N.Y.S.2d at 232, 528
> N.E.2d 153.  Accordingly, courts which have relied upon the
> party's selection of a forum in determining whether collateral
> estoppel should apply have done so only where the choice was
> freely and clearly made with the advice of counsel. [I]t would
> seem that New York courts would not extend this principle to an
> unrepresented party who simply submitted a complaint to the DHR
> without some indication of a knowledgeable, freely-made choice
> of forum.

*Id.* at 736 n.12 (citations omitted).

In the instant case, Plaintiff initiated the NYSDHR proceeding and was

represented by present counsel throughout its entirety.  Therefore, unlike the plaintiff in

*Kosakow*, Plaintiff presumably understood the implications of his decision.  Thus, because of

this distinction, the holding in *Kosakow* is not dispositive of the instant dispute.

The cases cited by the parties are similarly distinguishable.  For example, in their

memorandum in support of the instant motion, Defendants rely on a variety of cases in which a

New York administrative agency's no-probable-cause determination precluded a plaintiff from

litigating in federal court.  (*See* Defs.' Mem. at 9-12; Defs.' Reply at 6-9.)  In *Evans*, although

the court dismissed Plaintiff's section 1981 claim based on a NYSDRH determination, the

NYSDRH interviewed various witnesses and conducted a conference with witnesses present.

2002 WL 31002814 at **2-3.  In *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111 (2d

Cir. 1987), the Second Circuit precluded claims where the plaintiff received two formal hearings

and admitted that he had "fleshed out" the relevant issues.  *Id.* at 116-18.  In *Mendoza v. SSC&B

Lintas, N.Y.*, 799 F. Supp. 1502 (S.D.N.Y. 1992), the plaintiff was also given a full hearing.  *Id.*

at 1510.  In *Adame v. Tootsie Roll*, No. 98 C 1942, 1999 WL 14493, at *3 (N.D. Ill. Jan. 7,

1999), the plaintiff was represented by counsel and was given a formal hearing by the Illinois

Department of Human Rights.

In *Lloyd v. New York Botanical Garden*, No. 03 Civ. 7557, 2004 WL 2093468,

(S.D.N.Y. Sept. 17, 2004), cited by Plaintiff, the Court found that plaintiff was not collaterally

estopped from asserting his claims in federal court.  *Id.* *4.  In that case, plaintiff did not receive

a hearing, could not confront witnesses, and was not entitled to discovery.  *Id.* at 3.  However,

plaintiff was proceeding pro se and was unaware of certain evidence relied on by the agency,

thus leading the court to conclude that the agency determination may have been flawed.  *Id.*

Finally, Defendants cite to several New York cases in their reply papers wherein

proceedings were brought on direct appeal to review determinations by the NYSDHR.  (*See*

Defs.' Reply at 6-8.)  Although these cases employ a different standard, they are instructive.[6]

---

[6] Where a determination of no probable cause is rendered by the NYSDHR without
holding a public hearing, the appropriate standard of review is whether the determination was
arbitrary and capricious or lacking a rational basis.  *See Goston v. American Airlines*, 743
N.Y.S.2d 924, 925 (4th Dep't 2002).

After reviewing Defendants' citations and doing some independent research, the cases appear to universally indicate that the absence of a hearing will not render a NYSDHR determination inadequate where the plaintiff was otherwise given a full opportunity to present his case and rebut evidence submitted by respondent. *See, e.g.*, *Chirgotis v. Mobil Oil Corp*, 512 N.Y.S.2d 686, 688 (1st Dep't 1987) ("Notwithstanding that no hearing or conference is held, where a claimant has a full and fair opportunity to present her contentions and evidence there is no basis to annul the determination as arbitrary or capricious."); *Sheppard v. McCall*, 491 N.Y.S.2d 454, 455 (2d Dep't 1985) ("[T]he fact that no conference or hearing was held with respect to petitioner's complaint does not require the annulment of the determination, since it is within the discretion of the New York State Division of Human Rights to decide what method or methods to employ in investigating complaints of discrimination, and since petitioner has otherwise been afforded a complete and fair opportunity to present her case."); *Cornwell v. IBM Corp.*, 413 N.Y.S.2d 488, 489 (3d Dep't 1979) (affirming no probable cause finding of NYSDHR where determination was based on documentation alone; noting that "method of investigation is left to the discretion of the [NYSDHR] regional director and may include written or oral inquiry (9 NYCRR 465.6 [b]) [and] t[t]he complainant must be afforded an opportunity to rebut evidence submitted by or obtained from the respondent before the complaint may be dismissed for no probable cause (9 NYCRR 465.6 [c])"). In fact, in *Chirgotis*, the First Department reversed a finding by the lower court annulling a no probable cause determination by the NYSDHR. 512 N.Y.S.2d at 688. The lower court had found that the NYSDHR "did not pursue an in-depth investigation' because of its failure to conduct any interviews or hold a hearing or conference [and] was faulted for its reliance on the written submissions alone." *Id.* In reversing, the

Appellate Division noted that the claimant was afforded a full opportunity to present her claims and that "[i]t is within the discretion of the DHR to decide the method or methods to be employed in investigating a claim." *Id.* (citations omitted).

After careful consideration of the above, the Court finds that Plaintiff has not met his burden of establishing that he did not have a full and fair opportunity to litigate the issue of NUMC's alleged discrimination and retaliation before the NYSDHR. Although Plaintiff was not afforded a hearing before the NYSDHR, he has not explained how a hearing would have altered the outcome, or what facts could have been brought out that may have changed the result. Additionally, although the NYSDHR investigation may not have afforded Plaintiff the full panoply of procedures that are available to litigants in a civil action, the New York Court of Appeals has made clear that this fact alone is insufficient to make collateral estoppel inapplicable. *See Jeffreys v. Griffin*, 1 N.Y.3d 34, 42 (2003) (finding that disciplinary hearings were "'quasi-judicial' in the general sense required for application of the doctrine of collateral estoppel. . . . notwithstanding the differences between these proceedings and a civil trial."). Accordingly, Defendants' motion to dismiss Plaintiff's third, fourth, and fifth causes of action for violations of Sections 1981 and 1983, respectively, on the basis of res judicata and/or collateral estoppel is granted with respect to defendant NUMC only.

## IV. *Defendants' Motion to Dismiss Plaintiff's New York Executive Law Claim*

Plaintiff's sixth cause of action asserts a claim pursuant to section 296 of the New York Executive Law. Defendants assert that this claim should be dismissed because Plaintiff's election of an administrative remedy became irrevocable once his claim was heard by the NYSDHR and dismissed. Plaintiff has not opposed or even addressed Defendants' argument.

New York Executive Law § 297(9) provides, in pertinent part, as follows:

> Any person claiming to be aggrieved by an unlawful
> discriminatory practice shall have a cause of action in any court of
> appropriate jurisdiction . . . unless such person had filed a
> complaint hereunder or with any local commission on human
> rights . . .  provided that, where the division has dismissed such
> complaint on the grounds of administrative convenience, on the
> grounds of untimeliness, or on the grounds that the election of
> remedies is annulled, such person shall maintain all rights to bring
> suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9).  Thus, once a complainant elects the administrative forum by filing a

complaint with the NYSDHR, a subsequent judicial action on the same complaint is generally

barred unless one of the three exceptions in the statute is applicable.  *Id.*; *see also Moodie v.*

*Federal Reserve Bank of N.Y.*, 58 F.3d 879, 882-884 (2d Cir. 1995) (holding that plaintiff's

election to seek redress of his New York law discrimination claims before NYSDHR prior to

seeking judicial resolution in district court deprived court of subject matter jurisdiction under

former version of § 297); *Harrison v. New York City Off-Track Betting Corp.*, 107 F. Supp.2d

455, 457-58 (S.D.N.Y. 2000) (dismissing plaintiff's claims under the State and City human

rights laws based on election of remedies under present version of § 297 where NYSDHR made

no probable cause finding).  The bar to suit is jurisdictional.  *See Moodie*, 58 F.3d at 883-84.

Here, as discussed above, on March 4, 2003, Plaintiff filed a complaint with the

NYSDHR alleging race discrimination and unlawful retaliation.  After investigation, on

February 11, 2004, the NYSDHR issued a Determination and Order After Investigation

dismissing the complaint finding "no probable cause."  Because Plaintiff elected to have his state

human rights law claims adjudicated by the NYSDHR, and because none of the three exceptions

outlined in section 297(9) is applicable, this Court lacks subject matter jurisdiction over these

claims.  Accordingly, Defendants' motion to dismiss the sixth cause of action for violations of the New York Executive Law is granted.

**V.      *Defendants' Motion to Dismiss the Complaint as Against Defendants Turan, Mostow, and Kampe Based on Lack of Service***

Defendants argument in support of their motion to dismiss the Complaint against Defendants Turan, Mostow, and Kampe is twofold.  First, Defendants claim that the affidavit of service filed in the Clerk's Office indicates that the summons and complaint were mailed to NUMC and that these individual defendants cannot be served in their individual capacities in this manner.  Second, Defendants claim that Turan and Kampe were not employed by NUMC on the date of service.  Plaintiff counters that he did not effectuate service on these defendants by mail alone.  In fact, the Court file reflects that Plaintiff also personally served an attorney in the legal department at NUMC who represented that she was authorized to accept personal service on behalf of each defendant.  Defendants do not address this issue in their reply papers.  In any event, subsequent to the filing of this motion, and allegedly within the 120 day time frame provided by Federal Rule of Civil Procedure 4(m) for service of process, Plaintiff personally served both Kampe and Turan.  Thus, Defendants' motion to dismiss the Complaint as against these individual defendants is denied without prejudice, subject to any argument Defendants wish to make regarding service effectuated subsequent to the filing of this motion.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is DENIED in part and GRANTED in part.  Defendants' motion is GRANTED to the extent that: (1) the first cause of action for a violation of Title VII is dismissed as against the individual defendants; (2) the second cause of action for a violation of Title VI is dismissed in its entirety;

(3) the third, fourth, and fifth causes of action for violations of Sections 1981 and 1983 are dismissed as against defendant NUMC only; and (4) the sixth cause of action for a violation of New York Executive Law is dismissed in its entirety.  Defendants' motion to dismiss the Complaint as against the individual defendants based upon lack of service is denied without prejudice.

**SO ORDERED.**

Dated: Central Islip, N.Y.
      January 23, 2006

                                 /s_____
                                 Denis R. Hurley,
                                 United States District Judge